UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DURRELL PUCKETT,<br><br>        Plaintiff,<br><br>    v.<br><br>BARAONA, T. CAMPBELL,<br>HERNANDEZ, and D. WHITE,<br><br>        Defendants. | Case No. 1:23-CV-00054-HBK (PC)<br><br>ORDER DENYING MOTION TO STRIKE SURREPLY<br><br>(Doc. No. 141)<br><br>ORDER GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN PART, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT[1]<br><br>(Doc. Nos.  82, 125) |

Pending before the Court are the parties' cross-motions for summary judgment.  (Doc. Nos. 82, 125).  For the reasons set forth below, the Court denies Plaintiff's Motion for Summary Judgment and/or Partial Judgment and grants Defendants' Motion for Summary Judgment.

## I.  BACKGROUND

A.  Procedural History

    1.    Claims/Defendants in Operative Complaint

Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by

---

[1] All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1).  (Doc. No. 104).

filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1). Plaintiff's initial complaint named 14 defendants. (*Id*. at 2). Prior to screening, Plaintiff filed a First Amended Complaint, which named four defendants: Barrios, Hernandez, White and Gutierrez. (Doc. No. 12, "FAC"). On February 17, 2023, the Court screened Plaintiff's FAC, finding that it stated an Eighth Amendment conditions of confinement claim, and directed service on Barrios, Hernandez, White, and Gutierrez. (Doc. Nos. 17, 18).

On December 19, 2023, the Court granted Plaintiff's first motion to amend the complaint, directing the clerk to accept Plaintiff's Second Amended Complaint, which added two additional Defendants: Baraona and Associate Warden Jane Doe. (Doc. Nos. 50, 58). On February 14, 2024, the Court granted Plaintiff's second motion to amend the SAC to permit him to file a Third Amended Complaint ("TAC") that substituted Gaxiola for the previously named defendant Gutierrez, and added Chief Deputy Warden Campbell—previously referred to as Associate Warden Jane Doe—as a defendant. (Doc. Nos. 67, 72, 73).[2] Thereafter, the defendants relevant to the instant cross-motions for summary judgment, and the only remaining defendants[3]—(1) Campbell, (2) Baraona, (3) Hernandez, and (4) White—filed an answer to Plaintiff's TAC operative complaint. (Doc. No. 78).

2.      Plaintiff's Motion for Summary Judgment

On April 15, 2024, Plaintiff filed a Motion for Summary Judgment and/or Partial Judgment ("Plaintiff's MSJ"), which remained stayed during discovery. (Doc. Nos. 82, 87). Supporting his MSJ, Plaintiff submits: (1) points and authorities; (2) pages from his TAC, some of which are titled as a statement of undisputed material facts and Plaintiff's declaration in support; (3) the sworn declaration of inmate Nirran Wells; and (4) the sworn declaration of inmate Arlington Heyligar. (Doc. No. 82). On November 4, 2024, Plaintiff filed a supplemental

_____

[2] Through his second motion for leave to amend, filed January 11, 2024, Plaintiff did not seek to add new claims or defendants but requested only to substitute the incorrectly named Defendant and confirm the identity of Jane Doe Defendant. (*See* Doc. No. 67 at 1; *see also* Doc No. 72 at 2). Therefore, the only claims before the Court are Eighth Amendment violations related to conditions of confinement and medical deliberate indifference.

[3] Barrios and Gaxiola were previously dismissed pursuant to the Court's November 20, 2024, Order granting Plaintiff's motion for voluntary dismissal. (Doc. Nos. 96, 105). Plaintiff's third motion to amend, seeking to add K. Allison as a defendant, was denied on December 3, 2024. (Doc. No. 108).

motion in support of his MSJ.  (Doc. No. 97).  Plaintiff's one-page supplemental motion in support of his MSJ mainly asserts that nonparty K. Allison, Defendant Campbell and Defendant Hernandez have had multiple lawsuits filed against them.  (Doc. No. 97).

After the parties engaged in and completed discovery, Defendants filed an opposition to Plaintiff's MSJ on March 25, 2025.  (Doc. No. 126).  Defendants' opposition includes their response to Plaintiff's separate statement of undisputed facts.  (Doc. No. 126 at 4–9).

On April 10, 2025, Plaintiff requested an extension of time to file a reply, and the Court granted Plaintiff a fourteen-day extension the following day.  (Doc. Nos. 128, 129).[4]  Plaintiff has not filed a reply to Defendants' opposition or submitted a request for an additional extension to do so.  *See* docket.  The time for Plaintiff to file a reply has long expired.  Local Rule 230(l).

3.      Defendants' Motion for Summary Judgment

On March 25, 2025, the same day they filed an opposition, Defendants filed their Motion for Summary Judgment ("Defendants' MSJ").  (Doc. No. 125).  Supporting their MSJ, Defendants submit: (1) a memorandum of points and authorities (Doc. No. 125-1); (2) a request for Judicial Notice (Doc No. 125-2); (3) a separate statement of undisputed facts (Doc. No. 125-3); (4) the sworn declaration of Deputy Attorney General P. Kealy (Doc. No. 125-5); (5) the sworn declaration of Defendant Baroana (Doc. No. 125-6); the sworn declaration of Defendant White (Doc. No. 125-7); the sworn declaration of Defendant Hernandez (Doc. No. 125-8); the sworn declaration of Defendant Campbell (Doc. No. 125-9); and the sworn declaration of Litigation Coordinator P. Williams (Doc. No. 125-10).

Plaintiff filed an opposition which includes (1) a response to Defendants' separate statement of undisputed facts and (2) various medical records.  (Doc. No. 130 at 6–27).

---

[4] In its April 11, 2025 Order granting in part Plaintiff's motion for an extension to file his reply, the Court noted that Plaintiff's assertion that he was not served with the opposition to Plaintiff's MSJ may have been due to his recent transfer to another facility.  (Doc. No. 128 at 1).  Both Defendants' MSJ and opposition to Plaintiff's MSJ were sent to the same facility on the same day.  (*Id*. (first citing Doc. No. 126 at 10; and then citing Doc. No. 125-11 at 2)). Therefore, the Court directed Defendants to re-serve Plaintiff with both pleadings if they had not already done so.  (*Id*. at 2).  On April 15, 2025, Defendants filed their notice of compliance explaining that they had re-served the pleadings as directed.  (Doc. No. 133).  The docket reflects that Plaintiff received the April 11, 2025 Order and thereafter filed subsequent responsive pleadings to Defendants' MSJ on April 14, 2025 (opposition) and June 4, 2025 (surreply).  (Doc. Nos. 130, 140).

Defendants' Reply includes a reply to Plaintiff's response to Defendants' separate statement of undisputed facts. (Doc. No. 138 at 5–15). Plaintiff's surreply primarily consists of responses to Defendants' characterization of his responses to Defendants' separate statement of undisputed facts. (Doc. No. 140 at 2–11). Defendants timely filed a motion to strike the surreply as unauthorized. (Doc. No. 141).

Defendants correctly noted that neither the Federal Rules of Civil Procedure, nor the Local Rules for the Eastern District of California permit the filing of a surreply as a matter of right. *See Garcia v. Biter*, 195 F.Supp.3d at 1131 (E.D. Ca. July 18, 2016) (noting the plaintiff did not have a right to file a surreply under the local rules or under the Federal Rules of Civil Procedure). However, courts have discretion to permit, or preclude, a surreply. *Id.* at 1133 (citations omitted); *see also U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F. 3d 1195, 1203 (9th Cir. 2009) (holding that district court did not abuse discretion in refusing to permit "inequitable surreply"); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (providing the non-movant an opportunity to respond). A court may allow a surreply to be filed where there is a valid reason for such additional briefing, such as to prevent unfair prejudice. *Hill v. England*, 2005 WL 3031136, at *1 (E.D. Cal. 2005). Further, "[i]n this Circuit, courts are required to afford *pro se* litigants additional leniency." *Hester v. Clendenin*, 2022 WL 2541632, at *2 (E.D. Cal. Jul. 7, 2022) (citing *Wilhelm v. Rotman*, 680 F.3dd 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. DiVittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)), *findings and recommendations adopted by*, 2022 WL 3587803 (E.D. Cal. Aug. 22, 2022).

While Plaintiff did not first seek leave from the Court to file a surreply, the undersigned finds that striking Plaintiff's surreply would not necessarily serve the interests of justice. *See U.S. Equal Employment Opportunity Commission v. Sunshine Raisin Corporation*, 2023 WL 4352426 (E.D. Cal. Jun. 13, 2023) (denying motion to strike reply because it exceeded page limits set by the court's case management and scheduling order) (citation omitted). Given Plaintiff's pro se status, and because his surreply is limited to addressing Defendants' characterization of his responses to Defendants' separate statement of undisputed facts, the Court will accept Plaintiff's

4

surreply to the extent relevant.

II.  APPLICABLE LAW

A.  Summary Judgment Standard

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Id.* at 323.  An issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there to be a genuine issue of a material fact.  *See* Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).  However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

5

The court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and showed judgment to be appropriate as a matter of law.  *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence."  *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.  *Orr v. Bank of America*, NT & SA, 285 F.3d 764, 772 (9th Cir. 2002).  A mere scintilla of evidence is not sufficient to establish a genuine dispute to defeat an otherwise properly supported summary judgment motion.  *Anderson.*, 477 U.S. at 252.  However, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record" courts "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (cleaned up).  While performing its obligation to examine each cross-motion independently, "the court must review the evidence submitted in support of each cross-motion." *Id*.  When reviewing evidence properly submitted with each cross-motion, the court nevertheless remains obligated to determine whether a material factual dispute exists, regardless of whether the opposing party has specifically identified the same evidence in its opposing papers. *Id*.

A plaintiff's verified complaint may serve as an affidavit in opposition to summary judgment if based on personal knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc).  However, a complaint's conclusory allegations unsupported by specific facts, will not be sufficient to avoid summary judgment. *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir. 2001).  And, where a plaintiff fails to properly challenge the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  The omission of an argument, document, paper, or objection is not to be construed to mean that the Court did not consider the argument, document, paper, or objection.  Instead, the Court thoroughly reviewed and considered the evidence deemed admissible, material, and appropriate for purposes of issuing this order.

B. Eighth Amendment – Conditions of Confinement

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. amend. VIII. Officials have an obligation to protect prisoners from the risk of infectious diseases.  *Helling*, 509 U.S. at 33 (citing cases critical of the failure to protect prisoners with contagious diseases from others).  Inmates who allege they are being subjected to unsafe conditions that are violative of the Eighth Amendment must assert facts that reflect a showing of two components: (1) an "objective component"—the objective seriousness of the challenged condition, and (2) a "subjective component"—the responsible official's subjective state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In challenging living conditions under the Eighth Amendment, a prisoner must establish "unquestioned and serious deprivations of basic human needs" or the absence of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *accord Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Basic human needs identified by the Supreme Court include "food, clothing, shelter, medical care and reasonable safety," *Helling*, 509 U.S. at 32, as well as "warmth [and] exercise."  *Wilson*, 501 U.S. 199–200.  Factors affecting whether a condition is sufficiently serious include its duration, the attendant circumstances, and nature of the particular deprivation.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To satisfy the subjective prong, the inmate must show that the prison official was deliberately indifferent—"possessed a sufficiently culpable state of mind."  *Wilson*, 501 U.S. 297–98.  This requires the official to be aware of the substantial risk of harm and disregard that

risk by failing to abate it using reasonable measures. *Farmer*, 511 U.S. at 837–45. This level requires more than negligence but less than actual malice. *Id.* at 835–36.

C. Eighth Amendment – Medical Deliberate Indifference

The Constitution requires prison officials to provide inmates with reasonably adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To hold an official liable for violating this duty under the Eighth Amendment, the inmate must satisfy two prongs, an objective prong and subjective prong. First, the inmate must suffer from a serious medical need (the objective prong); and second the official must be deliberately indifferent to the inmate's serious medical need (the subjective prong). *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). A medical need is "serious" if the failure to treat "could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations omitted). The "second prong— defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (internal citations omitted). This standard requires that the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

Deliberate indifference is a higher standard than medical negligence or malpractice, and a difference of opinion between medical professionals—or between a physician and the prisoner— generally does not amount to deliberate indifference. *See generally Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (A mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").

8

To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson*, 90 F.3d at 332.

Neither will an "inadvertent failure to provide medical care" sustain a claim. *Estelle*, 429 U.S. at 105. Misdiagnosis alone is not a basis for a claim, *see Wilhelm*, 680 F.3d at 1123, and a "mere delay" in treatment, "without more, is insufficient to state a claim of deliberate medical indifference," *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Instead, a prisoner must show that a delay "would cause significant harm and that defendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002).

## III.  ANALYSIS

### A.  Allegations in Plaintiff's TAC

Plaintiff, a California Department of Corrections and Rehabilitation ("CDCR") prisoner formerly housed at the Corcoran facility ("Corcoran"), brings this action against Corcoran correctional staff members, alleging unsafe conditions of confinement and inadequate medical care in violation of the Eighth Amendment, arising from Defendants' racially motivated refusal to (1) prevent Plaintiff's exposure to COVID-19 ("COVID") and (2) treat his subsequent contraction of the virus. (Doc. No. 73). The remaining Defendants include (1) Chief Deputy Warden Campbell, (2) Sergeant Baraona, (3) Officer Hernandez, and (4) Officer White.[5] The events giving rise to the operative complaint occurred between January 2021 and February 2021 at Corcoran. (*Id*. at 3–4). The following allegations are averred in the TAC.

Plaintiff asserts that, on an unspecified date in January 2021, another inmate named Simms exhibited visible symptoms of COVID, including persistent coughing and vomiting. (*Id*. at 3). Plaintiff maintains that his diabetic condition places him at heightened risk of contracting COVID and that he fears dying from the virus "like [his] diabetic brother." (*Id*. at 3–4). Despite informing Defendant White of his elevated risk of susceptibility, White and two other nonparty

---

[5] *See supra* Part I.A.

correctional staff allegedly refused to implement quarantine protocols or relocate inmate Simms. (*Id*. at 3). The next day, Plaintiff requested a COVID test because Simms had tested positive, and Plaintiff began experiencing symptoms, including vomiting blood and dizziness. (*Id*.).

On January 28, 2021, Plaintiff claims Defendant Baraona observed him vomiting blood but refused Plaintiff's request to facilitate medical care. (*Id*. at 4). Instead, Baraona made racial slurs and expressed an intent to deny Plaintiff any treatment. (*Id*.). Hernandez, who was also present, echoed similar sentiments and reinforced the denial of medical care, allegedly stating that Plaintiff was "going to die like his [expletive] brother." (*Id*.). As Plaintiff collapsed onto the floor in distress, Baraona and Hernandez purportedly laughed and instructed a psychiatric technician to bypass his cell. (*Id*.).

Between January 28, 2021, and February 2, 2021, Plaintiff contends that he directly asked Defendant Campbell for assistance, requesting either to be moved or that inmate Simms be placed in isolation to prevent further spread of COVID within the cell block. (*Id*. at 3). Campbell allegedly responded by stating that Plaintiff should file a grievance and added, "hopefully, you're not dead by then." (*Id*.). Campbell then laughed at Plaintiff's predicament. (*Id*.). Despite being informed that Plaintiff's brother had died from COVID, Campbell dismissed Plaintiff's concerns. (*Id*.).

Plaintiff claims that, because of Defendants' conduct, he endured physical harm—including COVID infection, vomiting blood, dizziness, and pain—as well as psychological distress in the form of panic attacks, excessive fear, and suicidal thoughts. (*Id*. at 3–4). He asserts that Defendants' refusal to act, coupled with their use of derogatory language and intentional disregard for his medical condition, violated his Eighth Amendment rights and directly contributed to his suffering. (*Id*.). For relief, Plaintiff seeks compensatory and punitive damages against all named Defendants. (*Id*. at 5).

B. Material Facts

1. Request for Judicial Notice

Defendants request that the Court take judicial notice of four exhibits: (1) California Governor Newsom's Proclamation of a State of Emergency due to COVID-19, published on the

10

Governor of California website, dated March 4, 2020 ("Exhibit A"); (2) an article titled "Four years later, what do we know about COVID-19?," published on the University of Michigan Medicine website, dated March 5, 2024 ("Exhibit B"); (3) an article titled "People with Certain Medical Conditions and COVID-19 Risk Factors," published on the Centers for Disease Control and Prevention ("CDC") website, dated January 6, 2025 ("Exhibit C"); and (4) an article titled "Your Immune System and Diabetes," published on the CDC website, dated May 15, 2024 (Exhibit D"). (Doc. No. 125-2 at 2–30). Plaintiff does not object to Defendants' request or dispute the authenticity or the relevance of these records.

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court takes judicial notice of the existence, publication date, and source of Exhibit B, but declines to accept the truth of its substantive medical claims. *See Woodall v. Walt Disney Co.*, 2024 WL 5337348, at *7 (C.D. Cal. Nov. 1, 2024) ("The Court denies Plaintiff's request for judicial notice of information from third-party websites . . . because the Court cannot take judicial notice of the truth of the contents therein."); *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (same).

The Court grants Defendants' unopposed request for judicial notice of Exhibits A, C, and D, as they contain information available to the public on governmental websites. *See Daniel-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities [ ], and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."); *see also Jones v. Pollard*, 2023 WL 4728802, at *2 n.7 (S.D. Cal. July 24, 2023) (granting the defendant's unopposed request for judicial notice of publicly available information on CDC's website).

2. Undisputed Material Facts

Supporting his MSJ, Plaintiff submits an "undisputed statement of facts" and a "complaint statement of facts." (Doc. 82 at 3–5). However, these sections appear to be photocopies of the

11

TAC.  (*Compare id.*, *with* Doc. No. 73 at 2–3).  Plaintiff also attaches the sworn declarations of inmates Nirran Wells and Arlington Heyligar.  (Doc. No. 82 at 11–12).  These declarations support Plaintiff's position that Simms was diagnosed with COVID and that certain Defendants knew of Plaintiff's diabetic condition and expressed racial animus toward him.  (*See id.*).  Plaintiff also filed a one-page supplemental motion for summary judgment, stating that nonparty K. Allison and Defendants Campbell and Hernandez had multiple suits filed against them.  (Doc. No. 97).  Defendants' opposition includes their response to Plaintiff's separate statement of undisputed facts.  (Doc. No. 126 at 4–9).

In support of their MSJ, Defendants submit a Separate Statement of Undisputed Facts ("SSUF").  (Doc. No. 125-3).  Plaintiff's opposition includes a response to Defendant's separate statement of undisputed facts. (Doc. No. 130 at 6–11).  Defendants' reply includes a reply to Plaintiff's response to Defendants' SSUF.  (Doc. No. 138 at 5–15).  Plaintiff's surreply primarily includes responses to Defendants' characterization of Plaintiff's responses to Defendants' SSUF.  (Doc. No. 140 at 2–11).

Each listed fact in Defendants' SSUF cites to a declaration, the TAC, Plaintiff's medical records, or Plaintiff's deposition.  (*See* Doc. No. 125-3).  Nearly all of Plaintiff's objections and undisputed facts lack evidentiary support.  (*See id*. Doc. 82 at 3–5; Doc. No. 130 at 6–11; Doc. No. 140 at 2–11).  Where Plaintiff's response to Defendants' SSUF or his statement of undisputed facts is based solely on conclusory statements or the TAC and lacks detailed facts, while Defendant provides detailed facts or documentary evidence in support, the Court does not find Plaintiff's objections or statements of fact sufficient to establish a genuine dispute of material fact unless otherwise noted.  *See Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc); *see also FTC v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").  Moreover, to the extent a statement made in Plaintiff's pleadings contradicts his sworn deposition testimony, the deposition controls.  *See George v. Morris*, 736 F.3d 829, 843–44 (9th Cir. 2013) (explaining "a party cannot create an issue of fact by an affidavit contradicting prior deposition testimony." (cleaned up) (quoting *Kennedy v. Allied*

12

*Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  Having reviewed the record, the Court finds the following facts to be material and undisputed, unless otherwise noted.

- Plaintiff Durrell Puckett is incarcerated at California Department of Corrections and Rehabilitation ("CDCR"). At all times relevant to the allegations in this case, Plaintiff was housed at CDCR's Corcoran facility ("Corcoran").  (Doc. No. 73).

- Plaintiff filed his Third Amended Complaint ("TAC") on January 11, 2024, while housed within the custody of CDCR.  (Doc. No. 73 at 1).

- In his TAC, Plaintiff alleges that in late January 2021, Defendants refused to quarantine inmate Simms housed in Plaintiff's housing unit who had COVID-19 ("COVID") symptoms.  Plaintiff shared a vent with Simms, who allegedly discussed his symptoms with Defendant White.  Plaintiff voiced concerns about contracting COVID due to his diabetes and requested that either he or Simms be moved.  Defendants Hernandez and White allegedly dismissed Plaintiff's concerns, telling him he could die and that they did not want to do extra work to move him or Simms.  Simms tested positive approximately a day later, and Plaintiff began to experience dizziness and vomit blood, but Defendants refused to test him.  Plaintiff requested medical attention in front of Defendants Baraona and Hernandez, who allegedly laughed and instructed medical staff not to assist.  (Doc. No. 73 at 3–4).

- As of January 26, 2021, Defendant Baraona was employed by CDCR as a Correctional Sergeant at Corcoran.  (Doc. No. 125-6 at 1 ¶ 1).

- As of January 26, 2021, Defendant Campbell was employed by CDCR as a Chief Deputy Warden at Corcoran.  (Doc. No. 125-9 at 1 ¶ 1).

- As of January 26, 2021, Defendant Hernandez was employed by CDCR as a Correctional Officer at Corcoran. (Doc. No. 125-8 at 1 ¶ 1).

- As of January 26, 2021, Defendant White was employed by CDCR as a Correctional Officer at Corcoran. (Doc. No. 125-7 at 1 ¶ 1).

- As of January 26, 2021, Plaintiff was housed in Corcoran Facility 3A, Building 3 ("Building 3A03"). Plaintiff did not have a cellmate. (Doc. No. 125-5 at 158:15-16; Doc.

No. 125-6 at 2 ¶ 2; Doc. No. 125-7 at 2 ¶ 2; Doc. No. 125-8 at 2 ¶ 2; Doc. No. 125-9 at 2 ¶¶ 3–5).

- As of January 26, 2021, Simms was housed in Building 3A03 but on a different tier than Plaintiff. (Doc. No. 125-5 at 158:7-14).

- Building 3A03 served as an Administrative Segregation Unit ("ASU") for individuals receiving Enhanced Outpatient Program ("EOP") level of care. Individuals housed here were deemed maximum custody due to serious commitment offenses or risks posed to others. The cells had floor-to-ceiling solid walls and solid doors. (Doc. No. 125-9 at 2 ¶¶ 3–5).

- Plaintiff was diagnosed with Type 2 diabetes mellitus on August 15, 2019. (Doc. No. 125-5 at 9; Doc. No. 73 at 3.)

- People with Type 2 diabetes might not have a higher risk of contracting COVID than the general population. (Doc. No. 125-2 at 2–3). Plaintiff disputes this fact because he did not contract COVID until the "policy was violated," but fails to provide evidentiary support. (Doc. No. 140 at 5). The Court notes that the CDCR's COVID policy only states, "patients with diabetes are at increased risk for severe illness" and does not mention whether that diabetic patients have a higher risk of contraction. (Doc. No. 125-10 at 48, 98).

- As of December 30, 2020, an incarcerated individual would be placed on quarantine status if they were asymptomatic of COVID and had, in the past fourteen days, had close contact (within six feet and cumulatively at least ten minutes) with a confirmed case of COVID or direct contact with secretions of a confirmed case of COVID during the infectious period and had had no positive tests for COVID in the past ninety days. (Doc. No. 125-10 at 5–6, 78).

- As of December 30, 2020, a determination of quarantine status would be made by a medical provider who would also evaluate the individual to determine an appropriate medical disposition and the resulting housing arrangements. (Doc. No. 125-9 at 3 ¶¶ 11–12; Doc. No. 125-10 at 55–56, 80, 85, 106–107, 113).

14

- As of December 30, 2020, for an incarcerated individual who was exposed to a confirmed COVID case, and therefore on quarantine status, the preferred housing option was to quarantine that individual alone in a space with solid walls and solid doors because these spaces were considered adequate protection against the transmission of COVID through shared breathing air. Therefore, the protocol for housing individuals housed in 3A03 and on quarantine status was to quarantine them in place. (Doc. No. 125-9 at 2 ¶ 5; Doc. No. 125-10 at 16, 104).

- As of December 30, 2020, if an incarcerated individual tested positive for COVID, they would be placed on isolation status. (Doc. No. 125-10 at 17.)  This determination, as well as any subsequent determination regarding required housing arrangements, was made by the medical staff.  (Doc. No. 125-10 at 55–56, 80, 85, 106–107, 113).

- As of December 30, 2020, the protocol for housing 3A03 inmates who tested positive for COVID and, therefore, required isolation, was to isolate them in place.  (Doc. No. 125-9 at 2 ¶ 5; Doc. No. 125-10 at 54).

- Correctional staff, including the Defendants, would receive directives from medical staff regarding an inmate's need for placement in quarantine and isolation and would facilitate any necessary cell moves.  (Doc. No. 125-6 at 2 ¶ 6; Doc. No. 125-9 at 3 ¶¶ 1112; Doc. No. 125-8 at 2 ¶ 7; Doc. No. 125-7 at 2 ¶ 7; Doc. No. 125-10 at 106–107).

- Although vomiting blood was not listed as a recognized COVID symptom by California Correctional Health Care Services ("CCHCS") or the Centers for Disease Control and Prevention ("CDC"), nausea and vomiting were included.  (Doc. No. 125-10 at 102).

- On January 28, 2021, Plaintiff was placed on quarantine status, due to his possible exposure to multiple inmates testing positive for COVID.  (Doc. No. 125-5 at 29).

- Between January 28 and February 4, 2021, Plaintiff was seen multiple times daily by medical staff as part of COVID Quarantine Rounding, who noted no symptoms of COVID, including nausea or vomiting.  (Doc. No. 125-5 at 11–27, 57–58, 63–64, 66–72, 75).

- Between January 28 and February 5, 2021, Plaintiff had additional interactions with

15

medical staff, who noted no symptoms of COVID, including nausea or vomiting.  (Doc. No. 125-5 at 29–37, 59–62, 73–74, 76–77).

- Plaintiff refused medical treatment or consultation on multiple occasions between January 28 and February 6, 2021, including refusals of COVID-related care.  (Doc. No. 125-5 at 33–55).

- On January 25, 2021, Plaintiff was offered the first shot of the Moderna COVID vaccine but refused vaccination despite being provided with an information pamphlet.  (Doc. No. 125-5 at 73–74).

- As of December 30, 2020, CDCR protocol required testing quarantined inmates for COVID every three to seven days.  (Doc. No. 125-10 at 77).

- As of December 30, 2020, COVID testing of incarcerated individuals was coordinated and conducted by medical staff.  (Doc. No. 125-10 at 87–89).

- Plaintiff was tested for COVID four times between January 5 and February 2, 2021.  On January 26, 2021, Plaintiff had a COVID test, which was determined to be negative on January 28, 2021.  After initially refusing to be tested for COVID on February 1, 2021, a COVID test was administered to Plaintiff on February 2, 2021. On February 5, 2021, the results of this COVID test came back positive. (Doc. No. 125-5 at 42–43; 81–86).

- Multiple inmates in Plaintiff's housing unit exhibited COVID symptoms. (Doc. No. 125-5 at 158:22-159:22, 167:17-22, 168:12-15).

- Plaintiff was told by correctional staff, including Defendants Hernandez and White, that medical personnel determined quarantine or isolation status.  (Doc. No. 125-5 at 160:6-19, 161:1-5).

- Plaintiff did not submit a formal health care grievance requesting a housing change following inmate Simms's alleged COVID diagnosis.  (Doc. No. 125-5 at 165:25-166:3).

C.  Conditions of Confinement

Plaintiff alleges that Defendants "Barrios, [ ] White and Hernandez showed deliberate indifference to a serious risk of harm to [P]laintiff [ ], when they refused to quarantine [inmate Simms] with symptoms of COVID-19 and allowed him to remain on the cell block" in January

16

2020. (Doc. No. 73 at 3; *see also* Doc. No. 82 at 4). Through his opposition, Plaintiff asserts that Defendants refused to remove Simms or Plaintiff, despite Plaintiff's diabetic condition and the low-pressure ventilation he shared with Simms, which Plaintiff attributes to Defendants' racial animus. (Doc. No. 130 at 1–2). Plaintiff states that his "COVID tests [were] "managed [and] monitored but [ ] Defendants[ ] kept lying" and that he "never had a chance to sign [the] refusals."[6] (*Id*. at 3).

Defendants concede that disputes of fact exist as to whether Plaintiff (1) requested that Defendants move either him or Simms and voiced his concerns about easily contracting COVID as a diabetic, and (2) refused a COVID test administered by Defendants. (Doc. No. 125-1 at 8–9). However, Defendants argue, *inter alia*, that (1) they followed the directives and protocols regarding COVID-related interventions for Plaintiff and other incarcerated individuals in his housing unit, which neither required nor recommended the removal of Simms or Plaintiff; and (2) medical staff had exclusive authority to determine whether an inmate required placement on quarantine or isolation status. (*Id*. at 6–11).

At the outset, the Court acknowledges that COVID poses a substantial risk of serious harm. *See Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, 2021 WL 2227636, at *9 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.'"); accord *Sanford v. Eaton*, 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021); *Benitez v. Sierra Conservation, Center, et al.*, 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (transmissibility of the COVID virus in conjunction with plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are sufficient to satisfy the objective prong). "[T]here is a general consensus that a prisoner states a cognizable Eighth Amendment conditions of

---

[6] *See infra* Part III.D. The Court notes that it appears that medical staff, rather that the Defendants, were responsible for documenting Plaintiff's refusals to sign for declining medical attention. (*See, e.g.* Doc. 125-5 at 45).

confinement claim if the prisoner can sufficiently allege[] that a defendant knew of the risks of COVID-19 and had authority to mitigate the risks, yet did nothing to mitigate those risks." *Jones v. Sherman*, 2022 WL 783452, at *7 (E.D. Cal. 2022).

In the instant matter, the record does not reflect that any Defendant put Plaintiff at substantial risk of suffering serious harm, or that any Defendant failed to take reasonable measures to abate a serious risk to Plaintiff's safety.  Plaintiff's conditions of confinement claim is premised on the assertion that Defendants refused to remove or isolate Simms or Plaintiff in order to prevent Plaintiff from contracting COVID.[7]  The Court finds that Defendants were not deliberately indifferent to a serious threat to Plaintiff's health and safety for two reasons.

First, there is no genuine dispute that Defendants lacked the authority to cause Plaintiff's injuries, and therefore could not be the proximate cause.  In a Section 1983 action, the plaintiff must demonstrate that the defendant's actions directly caused the alleged injury.  *Chaudhry v. Aragon*, 68 F.4th 1161, 1169–70, n.11–12 (9th Cir. 2023) (explaining Section 1983 claims require proving both but-for causation and proximate cause.).  In resolving an Eighth Amendment claim against an individual defendant, causation must be assessed through "a very individualized approach which accounts for the duties, discretion, and means of each defendant."  *Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988) (citing *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty—possessed of authority and means—to prevent the injury.")).

The undisputed evidence shows that Defendants lacked the authority to transfer Plaintiff to another building without a prior directive from medical staff under CDCR's COVID protocols

---

[7] The Court notes that prisoners generally do not have constitutionally protected right to housing preferences. *Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (pretrial detainees have no due process right to a private cell); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976) (prison officials have broad discretion with inmate housing assignments); *Allen v. Figueroa*, 56 F.3d 70, at *7 (9th Cir. 1995) (unpublished disposition) (inmates have no Eighth and Fourteenth Amendment rights to be housed with certain individuals).

and procedures. (Doc. No. 125-9 at 3 ¶¶ 11–12; Doc. No. 125-10 at 55–56, 80, 85, 106–107, 113). The role of correctional staff was simply to facilitate the placement of an inmate *if* medical staff determined that quarantine or isolation was appropriate. (Doc. No. 125-6 at 2 ¶ 6; Doc. No. 125-9 at 3 ¶¶ 11–12; Doc. No. 125-8 at 2 ¶ 7; Doc. No. 125-7 at 2 ¶ 7; Doc. No. 125-10 at 106–107). Plaintiff fails to identify any evidence to support that any of the Defendants had authority to transfer Plaintiff under his alleged circumstances. Thus, it is undisputed that Defendants, as custodial staff with no medical training, were without authority to mandate a COVID isolation or quarantine transfer. Therefore, Defendants have met their burden to show the absence of a genuine dispute as to proximate cause. *See Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019) (finding that liability under the Eighth Amendment is unwarranted for a defendant who followed others' directives and had no independent authority regarding the alleged misconduct); *see also Goode v. Canedo*, 2024 WL 1914352, at *7 (S.D. Cal. May 1, 2024) (finding "no genuine dispute that [the officer correctional] lacked the discretion or ability to override the [COVID isolation transfer order]").

Second, Defendants have presented undisputed evidence that CDCR reasonably responded to risk posed by COVID, establishing detailed protocols to mitigate the transmission of the virus at its facilities. "In the context of a conditions of confinement claim related to a defendant's response to COVID, the key inquiry is not whether prison officials perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they responded reasonably to the risk." *Maney v. Oregon*, 729 F. Supp. 3d 1087, 1122 (D. Or. 2024) (internal quotations omitted) (quoting *Jones v. Pollard*, 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023) (collecting cases)).

Plaintiff asserts that in January 2021, inmate Simms exhibited symptoms of COVID, and he was at an elevated risk of contracting COVID due to his diabetic condition and the shared vents in Building 3A03. (Doc. No. 75 at 3–4). The TAC asserts that Defendants failed to take action in violation of COVID policy and protocol. (*Id*. at 4; *see also* Doc. No. 140 at 5). However, Plaintiff must provide more than mere conclusory allegations that Defendants have not done enough to control the spread of the virus through housing policies or other measures. *See*

19

*Booth v. Newsom*, 2020 WL 6741730, at \*3 (E.D. Cal. Nov. 17, 2020); *Blackwell v. Covello*, 2021 WL 915670, at \*3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID in the prison); *Sanford v. Eaton*, 2021 WL 1172911, at \*6 (E.D. Cal. Mar. 29, 2021) (explaining that "in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread" of COVID).

Beyond the fact that Plaintiff was housed in a building that contained both infected and non-infected inmates, Plaintiff does not allege facts reflecting that any Defendant was aware that the housing assignment posed a heightened risk to Plaintiff's safety but disregarded such risk. *See, e.g., Allen v. California Dep't of Corr.*, 2023 WL 2957690, at \*5 (E.D. Cal. Apr. 14, 2023) (no Eighth Amendment claim for housing plaintiff in building with sick and potentially infected inmates where plaintiff failed, *inter alia*, to establish that defendants were aware of heightened risk to plaintiff from doing so), *report and recommendation adopted*, 2023 WL 4089120 (E.D. Cal. June 20, 2023); *see also, e.g., Penwell v. Strange*, 2023 WL 6448584, at \*9 (W.D. Wash. Aug. 28, 2023) ("Defendants do not need to show they eliminated *all* risk of contracting COVID-19 to establish that they were not deliberately indifferent to its risks. That Plaintiff was infected does not show Defendants acted with deliberate indifference."), *report and recommendation adopted*, 2023 WL 6442516 (W.D. Wash. Oct. 3, 2023). Nor does Plaintiff's diabetic condition create a heightened awareness for Defendants, nonmedical professionals, that he might be more susceptible to contracting COVID.[8]

The record reflects that, at all relevant times, Plaintiff was housed in a single cell and on a different tier than Simms. (Doc. No. 125-5 at 158:7-14; Doc. No. 125-9 at 2 ¶¶ 3–5). On January 28, 2021, following a possible COVID exposure, Plaintiff was placed on quarantine status in compliance with CDCR's quarantine policies and procedures, which required him to remain in

---

[8] As of May 15, 2024, the CDC stated that "[p]eople with diabetes might not have a higher risk of getting infected with COVID-19." (Doc. No. 125-2 at 29).

his current single cell in Building 3A03.  (Doc. No. 125-5 at 29; Doc. No. 125-9 at 2 ¶ 5; Doc. No. 125-10 at 16, 104).  While a single cell may not have been perfect accommodations to prevent the transmission of COVID-19, this institutional-level response and policy not to relocate Plaintiff was nonetheless reasonable.  *See Benitez*, 2021 WL 4077960, at *6 (finding implementing measures of quarantining, isolation, vitals check, and restricting housing movement as reasonable); *Kersh v. Gastelo*, 2022 WL 17548074, at *5 (C.D. Cal. Aug. 23, 2022) (finding implementing measures of quarantining, testing, and dorm-reconfiguration as reasonable), *findings and recommendations adopted by*, 2022 WL 16783847 (C.D. Cal. Nov. 4, 2022); *see also Martinez*, 2022 WL 126054 at *6.  *See Benitez*, 2021 WL 4077960 at *5–6 (finding that housing a prisoner in a dorm with twenty-two other inmates for ten days during the COVID pandemic was not an unconstitutional condition of confinement).

Plaintiff's vague and unsupported assertion that procedures and protocols were violated is insufficient to establish that any Defendant knowingly subjected Plaintiff to a serious risk of harm by failing to move him or inmate Simms to another facility.  The record is devoid of facts establishing that any prison official was aware of a serious risk to Plaintiff's health and safety and failed to take reasonable measures to avert the risk.  Accordingly, the Court finds no genuine dispute of material fact that the Defendants were not deliberately indifferent.  Therefore, the Court denies Plaintiff's MSJ and grants Defendants' MSJ on the conditions of confinement claim.

D. Medical Deliberate Indifference

Plaintiff asserts that, on January 28, 2021, Defendants Hernandez and Baraona denied his request to see a doctor when he began vomiting blood and experiencing "fainting dizzy spells." (Doc. No. 73 at 4).  Defendants concede that disputes of fact exist as to Plaintiff's claim that he exhibited these symptoms in front of these Defendants and was denied medical treatment because of them.  (Doc. No. 125-1 at 8).  Nonetheless, the Court finds that the undisputed evidence establishes that Plaintiff cannot show a deliberate indifference to his serious medical needs during this time.

On January 25, 2021, Plaintiff was offered the Moderna COVID-19 vaccine but refused the vaccination despite being provided with an information pamphlet.  (Doc. No. 125-5 at 73–74).

On January 26, 2021, Plaintiff was given a COVID-19 test, which was determined to be negative two days later. (*Id*. at 84). That same day, nonparty Nurse Carino saw Plaintiff, and he requested to be moved from Building 3A03. (Doc. No. 130 at 14). Plaintiff reported that this was his first day of his participation in a hunger strike and denied any symptoms of "dizziness[,] [ ] abdominal pain, nausea, weakness, shortness of breath or chest pain." (*Id*.). Nurse Carino documented that Plaintiff had a scabbed area on his right wrist and noted that there was no active bleeding. (*Id*.). Nurse Carino instructed Plaintiff on the risks associated with a hunger strike and informed Defendant Barona of Plaintiff's hunger strike participation. (*Id*. at 14–15).

On January 28, 2021, Plaintiff was placed on quarantine status due to possible exposure to multiple inmates who had tested positive for COVID. (Doc. No. 125-5 at 29). After initially refusing a COVID test on February 1, 2021, Plaintiff was given a test on February 2, 2021. (*Id*. at 42–43; 81–86). On February 5, 2021, the results of this test came back positive. (*Id*.).

Between January 28 and February 5, 2021, Plaintiff was seen multiple times daily by medical staff as part of COVID quarantine rounding, as well as by other medical personnel, who noted no symptoms of COVID, including nausea or vomiting. (*Id*. at 11–27, 29–37, 57–64, 66–77). Plaintiff also refused medical treatment or consultation on multiple occasions between January 28 and February 6, 2021. (*Id*. at 33–55).

Even assuming arguendo that Defendants Hernandez and Baraona displayed racial animus toward Plaintiff, his deliberate indifference claim based on any alleged delay in providing medical care or any resulting harm from the denial thereof fails. *See Shapley*, 766 F.2d at 407 (a delay in treatment, without more, is insufficient to state a deliberate indifference claim); *see also Jett*, 439 F.3d at 1096 (a prisoner must provide sufficient evidence of the "harm caused by the [the prison official's] indifference" to establish a deliberate indifference claim). The undisputed record reflects that CDCR medical staff provided Plaintiff medical attention on January 26, 2021, and daily thereafter. *Jones v. Pollard*, 2023 WL 4728802, at *7 (S.D. Cal. July 24, 2023) (finding the "key inquiry" regarding prison officials response to COVID-19 is whether officials responded "reasonably to the risk," not whether they responded "perfectly"); *Hallinan v. Scarantino*, 466 F. Supp. 3d 587, 606 (E.D.N.C. 2020) (finding no deliberate indifference in prison's response to

22

COVID-19 and noting "[t]he important point, for purposes of the deliberate indifference analysis, is that medical staff are evaluating inmates who develop symptoms and making medical judgment calls about which inmates require isolation"); *Dizzley v. Stephon*, No. 8:20-CV-03590-JD-JDA, 2021 WL 3195916, at *8 (D.S.C. Jan. 21, 2021) (finding no genuine dispute of material fact regarding deliberate indifference where the evidence showed prison staff responded to plaintiff's COVID-19 symptoms by providing medication, frequent testing, and consistent medical monitoring contrary to plaintiff's claim that he was denied treatment), *report and recommendation adopted*, No. 8:20-CV-03590-JD, 2021 WL 3190334 (D.S.C. July 28, 2021).

Furthermore, at no time did any medical personnel report Plaintiff was vomiting blood or refuse to provide him any form of medical treatment. *See Jett*, 439 F.3d at 1096 ("If the harm is an isolated exception to the defendant's overall treatment of the prisoner it ordinarily militates against a finding of deliberate indifference." (cleaned up)). Therefore, the Court finds no genuine dispute of material fact that Defendant Hernandez and Baraona, or any of the Defendants, were deliberately indifferent to Plaintiff's COVID-related medical treatment. Accordingly, the Court denies Plaintiff's MSJ and grants Defendants' MSJ on the deliberate medical indifference claim.

E. Qualified Immunity

In the alternative, Defendants assert that they are entitled to qualified immunity in this case. A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *Wesby*, 138 S. Ct. at 589; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law." *Wesby*, 138 S. Ct. at 589 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have

23

violated the constitutional right at issue." *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)). "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL 1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946–47 (9th Cir. 2017). The plaintiff bears the burden of establishing that the right alleged was clearly established. *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

As discussed *supra*, the Court finds that Plaintiff did not satisfy the first prong of the qualified immunity analysis because Defendants have not committed a violation of Plaintiff's constitutional rights. Thus, the Court need not address the second prong. Therefore, the grants Defendants' MSJ.

Accordingly, it is ORDERED:

1. Defendants' Motion to Strike Surreply (Doc. No. 141) is DENIED.

2. Plaintiff's Motion for Summary Judgment and/or Partial Judgment (Doc. No. 82) is DENIED.

3. Defendants' Motion for Summary Judgment (Doc. No. 125) is GRANTED.

4. The Clerk of Court shall enter judgment in favor of Defendants and CLOSE this case.

Dated:    February 18, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

24